Wilson et al. *v.* Consolidated Dressed Beef Co.,
Appellant.

Argued December 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Theodore F. Jenkins,* with him *Richard A. Smith,* for appellant.—There was no evidence of negligence on the part of the driver: Post v. Richardson, 273 Pa. 56; Boose v. Walker, 86 Pa. Superior Ct. 218; Johnston v. McDade, 88 Pa. Superior Ct. 377; Robinson v. Ice Co., 292 Pa. 366; Bloom v. Bailey, 292 Pa. 348; Swift v. Corrado, 292 Pa. 543.

Mere proof of collision does not establish negligence of defendant as proximate cause of accident: Flanigan v. McLean, 267 Pa. 553; Gavin v. Tel. Co., 87 Pa. Superior Ct. 276.

Speed or traveling position are important only when they are the proximate cause of the accident: Bloom v. Bailey, 292 Pa. 348.

The physical facts here demonstrate beyond peradventure that Mrs. Wilson as she approached Sparks Street, was east of where she should have been, did not have her car under control, was therefore negligent, and was responsible for the accident, and all of its consequences: Davis v. Ice Co., 285 Pa. 177; Feldman v. Chernekoff, 291 Pa. 456.

The damages awarded the injured plaintiff are excessive.

There should have been a withdrawal of a juror on account of a newspaper article appearing during the trial and read by some of the jurors giving the amount the plaintiff was suing for: Kelly v. Ry., 270 Pa. 77; Carothers v. Ry., 229 Pa. 558; Quinn v. Rapid Transit Co., 224 Pa. 162; Fisher v. Penna. Co., 34 Pa. Superior Ct. 500; McKahan v. Ry., 223 Pa. 1; Hollinger v. Rys., 225 Pa. 424.

*C. Brewster Rhoads,* with him *Lawrence H. Eldredge* and *Roberts & Montgomery,* for appellees.—Defendant's negligence was the sole proximate cause of plaintiff's injuries.

Plaintiff was not guilty of contributory negligence: Heaps v. Traction Co., 276 Pa. 551; Kerk v. Peters, 261 Pa. 279; Lewis v. Wood, 247 Pa. 545.

The verdicts as reduced by the court below are not excessive: Moraski v. Transit Co., 293 Pa. 224; Zimmerman v. R. R., 293 Pa. 264; Petrie v. Kaufmann & Baer Co., 291 Pa. 211; Ensell v. Refining Co., 92 Pa. Superior Ct. 586.

The trial judge did not err in refusing defendant's motion for withdrawal of juror on ground of prejudice by publication of a newspaper article: Com. v. Grotefend, 85 Pa. Superior Ct. 7; Com. v. Valverdi, 32 Pa. Superior Ct. 241.

OPINION BY MR. JUSTICE WALLING, January 7, 1929:

These three appeals by defendant from judgments for plaintiffs, all result from one automobile collision and will be considered together. Broad Street, extending through Philadelphia in a northerly and southerly direction, is at right angles with, and the eastern end of, Sparks Street. The width of the cartway of the former is sixty-nine feet and of the latter forty feet. Sparks Street approaches Broad Street on a three per cent descending grade and from there north the latter is on a like descending grade. A three-story apartment house stands on the northwest corner of Broad and Sparks. The traffic on the west side of Broad Street moves southerly and on the east side, northerly.

The evidence was conflicting, but, in view of the verdicts, we must accept that most favorable to plaintiffs. So doing, it appears that at about noon of January 3, 1927, defendant's two and one-half ton auto truck, loaded with five thousand pounds of dressed beef, was driven down Sparks Street and onto Broad at the speed of at least twenty miles an hour, making a sharp left-hand turn (to the north) in the lane of southbound traffic, where, before reaching the center of Broad Street and at a point some fifty feet north of the center of Sparks Street, it collided with a southbound Ford car, driven by Mrs. Wilson, the plaintiff, and thence moved on in a semicircle until it landed forcibly against another Ford car, standing by the west curb of Broad Street, about ninety feet north of the north line of Sparks Street. Plaintiffs' car was wrecked, their seventeen months' old child killed and Mrs. Wilson permanently injured and disfigured.

There was ample evidence of the truck driver's negligence. It was his duty, on approaching this intersection with his heavily-laden truck, to have it under perfect control so that he could stop at the shortest possible notice. Furthermore, coming down into Broad Street at twenty miles an hour was a rate of speed incompatible with public safety. The direction the truck took with the distance it ran after the accident was evidence tending to show both excessive speed and lack of control.

Probably the truck driver's most cardinal fault was making the left-hand turn on the west side of Broad Street against the current of traffic, without keeping in line of the south half of Sparks Street until he had passed the center of Broad. This was in direct violation of the Act of June 30, 1919, P. L. 678, as amended by the Act of June 14, 1923, P. L. 718, section 25 of which (P. L. 748) provides, inter alia, "At the intersection of public highways, the operator of a motor vehicle shall keep to the right of the intersection of the centers of such highways when turning to the right, and shall pass to the right of such intersection before turning to the left." Again, while driving on the left side of a highway is not negligence, especially in the open country (Bloom v. Bailey, 292 Pa. 348; Boose v. Walker, 86 Pa. Superior Ct. 218), it is at least evidence of it on a two-way city street.

The question of contributory negligence was also for the jury. True, the truck approaching the intersection from the right had the right of way at the crossing (see section 25 of the Act of June 30, 1919, P. L. 678, 695, amended by section 25 of the Act of June 14, 1923, P. L. 718, 748), but that rule could not apply here for the accident happened in Broad Street, north of the intersection. Mrs. Wilson was driving on her own side of the street, some twenty to thirty feet from the west curb, and not bound to anticipate that some one would suddenly block her path. The truck, going at twenty miles an hour, was not in her view over three seconds before

the accident, and for only a fraction of that time did the truck appear to be turning against her. Whether in that brief time Mrs. Wilson could have changed her course to the right and escaped the collision is problematical, and was for the jury. "Negligence cannot be imputed because of the failure to perform a duty so suddenly and unexpectedly arising that there is no opportunity to apprehend the situation and to act according to the exigency: Eastburn v. United States Express Co., 225 Pa. 33": Post v. Richardson, 273 Pa. 56, 59. Being placed in sudden peril by the defendant's negligence, she was not required to exercise perfect judgment: Kuhns v. Conestoga Traction Co., 290 Pa. 303. The injury being such as to leave her mind a blank as to the accident, no presumption can be raised that she was blamable: Heaps v. Southern Pa. Traction Co., 276 Pa. 551. She might properly use any part of the west half of the cartway, which half being over thirty-four feet wide renders it immaterial whether she was twenty or thirty feet from the west curb. The provision in the Act of June 30, 1919, P. L. 678, 695, as amended by section 25 of the Act of June 14, 1923, P. L. 718, 748, which provides, "Every operator of a motor vehicle shall, at all times, keep as close as possible to the right-hand side of the highway, allowing other vehicles free passage to the left," has reference to the passing of motor vehicles on highways and not to general travel. There is no evidence that Mrs. Wilson was traveling at undue speed or was otherwise careless except that her car collided with the truck. The mere collision of motor vehicles upon the highway, without more, is not sufficient to charge either with negligence. See Gavin et al. v. Bell Tel. Co., 87 Pa. Superior Ct. 276. As the truck was taking a diagonal course, the fact that the contact was at its side does not necessarily convict plaintiff of contributory negligence.

The most serious feature of the case is the amount recovered. The jury awarded Mrs. Wilson $45,000, her

husband $10,000, on account of her injuries and $5,000 for the death of his infant son. The court in banc caused a reduction of the first to $35,000, the second to $5,000 and the last to $3,000. Appellant earnestly contends that the judgments first and last above stated are still grossly excessive. While our right to grant relief in such cases exists, it is limited. In the language of Mr. Justice SADLER, speaking for the court, in Gail v. Phila., 273 Pa. 275, 278: "We have said repeatedly that a judgment will be reversed on appeal on account of an exorbitant verdict only where the impropriety of permitting it to stand is so clear as to show an abuse of discretion on the part of the court below in declining to set it aside: Scott v. American Express Co., 257 Pa. 25"; and as stated by the chief justice, for the court, in Goldman et al. v. Mitchell-Fletcher Co., 285 Pa. 116, 119: "While this court has always been disinclined to interfere with awards of juries sustained by the trial tribunal, yet where the facts demonstrate a verdict to be so plainly excessive in any part as to indicate that the jury has abused its powers, and that abuse is not remedied by the court below, it becomes our duty to act; and this is the situation in the present case." We will interfere where the verdict is such as to shock our sense of justice and evidences a clear abuse of discretion on part of the trial court in refusing to set it aside: Dziak et al. v. Swaney, 289 Pa. 246; McIntyre v. Quaker City Cab Co., 283 Pa. 395; Knobeloch v. Pgh., H. & B. Ry. Co., 266 Pa. 140; Scott, Admx., v. American Exp. Co., 257 Pa. 25; Ensell et al. v. Atl. Ref. Co., 92 Pa. Superior Ct. 586. Our duty is here further limited by the fact that the court in banc has acted in the matter and substantially reduced each verdict. See Moraski v. Phila. Rapid Transit Co., 293 Pa. 224, 231.

The injuries to Mrs. Wilson were so grave that we are not shocked by the amount the court in banc permitted her to recover. She was thrown from the car striking her head and face on the pavement with such force as to

fracture her skull, also to break her jaw, the bones in her nose, the orbit of one eye and to seriously injure her cheek bone. Her face was bruised and so cut in numerous places as to require sutures. In fact, her face was literally crushed and permanently disfigured. Her right eye was so seriously hurt as to be permanently out of alignment, resulting in double vision; to overcome which she is compelled to bend her head forward. Some of her teeth were ruined and, although receiving the best possible expert surgical skill, she is unable to normally open her jaws and when they close the teeth strike end to end, with no overlapping of the upper jaw, as formerly. This prevents proper mastication of food. The nerves leading to her nose and mouth were so completely crushed and injured as to cause the loss of her sense of smell and taste. In addition her left arm was broken, her legs cut and bruised and she sustained other minor injuries, was confined in the hospital for six weeks and disabled for some time thereafter; in fact, she has never fully recovered her strength. Before the accident she was a beautiful young woman (thirty-four years of age) in perfect health, but as a result of the injuries is greatly impaired physically and a nervous wreck, with her face permanently disfigured. Ever since the accident she has endured and will continue to endure pain, suffering and inconvenience. We are not inclined to encourage extravagant verdicts, but under the circumstances here presented we are not prepared to declare $35,000 so grossly excessive as to warrant our interference.

No complaint is or can be made to the $5,000 allowed the husband for the injuries to his wife. In truth, he has already expended more than one-half that sum because of such injuries. The $3,000 for the death of the seventeen months' old child, however, is not based on any proof and cannot be sustained. The recovery permitted in such case is limited to the financial loss sustained. The only evidence here as to that is the doctor bill, funeral expenses, etc., amounting to $365. In fact,

appellees' counsel frankly stated at bar that the situation of the parents was such as to preclude the probability that the child, had he lived, would have become a wage earner during his minority. We are mindful of the cases which hold that the health of the child and the situation in life of the parents may afford proof of the probable prospective earnings of a child (Loughran v. Thomas Bros. Co., 65 Pa. Superior Ct. 302; Hammaker v. Watts Twp., 71 Pa. Superior Ct. 554, 556), but here the situation of the parents is admittedly such as to negative the conclusion of any earnings. "In a negligence case damages are never presumed; they must be proven, or at least such facts must be established as will furnish a basis for their assessment according to some definite and legal rule" : Beck v. Balt. & Ohio R. R. Co., 233 Pa. 344, 345. There can be no recovery for items of loss not proved even in case of action for death of a child: Kost v. Ashland Boro., 236 Pa. 164; Peters v. Bessemer, etc., R. R. Co., 225 Pa. 307; Beck v. Balt. & Ohio R. R. Co., supra. Where a minor child is killed, the parent has an undoubted right of action for the loss of its services. The trouble in the instant case is the entire lack of any proof as to such loss, and the admission that there is no probability of any. There being no question as to the facts, we may properly reduce the judgment under the Act of May 20, 1891, P. L. 101, section 2 of which provides, inter alia, "The Supreme Court shall have power in all cases to affirm, reverse, amend or modify a judgment, order or decree appealed from, and to enter such judgment, order or decree in the case as the Supreme Court may deem proper and just, without returning the record for amendment or modification to the court below." Phila., Balt. & W. R. R. Co. v. Perna, 272 Pa. 569, holds that in affirming a judgment this court may strike an item therefrom which has been improperly included.

Plaintiffs' statement avers, inter alia, that Mrs. Wilson, "sustained a fractured skull, concussion of the

brain, a broken nose, a fracture of the right arm, a fractured jaw, crushed face, injuries to her eyes, contusions and lacerations in and about her head, scalp, face, body and both legs, injuries to her mouth and teeth, a paralysis of the right side of the face and internal injuries." The loss of smell and taste were the natural result of some of the injuries complained of and did not require special mention in the pleadings. An averment of injury to the side covers the fracture of ribs: Koenig v. Quaker City Cab Co., 87 Pa. Superior Ct. 403. See also Clark v. Horowitz et al., 293 Pa. 441; Twinn v. Noble, 270 Pa. 500. In Krajkowski v. Phila. Rapid Transit Co., 282 Pa. 104, it was held error to admit evidence as to a heart injury, it having been omitted from the itemized list of injuries enumerated in plaintiff's statement.

The extent of the truck driver's injuries had no bearing on the case and the proposed medical evidence relating thereto would have served no useful purpose. Evidence was received as to his ability immediatly following the collision, and his condition thereafter was immaterial. It may be conceded that the collision caused him to lose control of the truck.

During the trial, the Evening Bulletin, a public newspaper in Philadelphia, contained some account of the case, including the amount ($75,000) named in Mrs. Wilson's statement of claim. The next morning the matter was called to the attention of the trial judge, when four of the jurors said they had read the article but that it would not influence their verdict. The trial judge cautioned the jury to entirely disregard it, but refused to withdraw a juror and continue the case. This was a matter largely within his discretion, which was wisely exercised. See Com. v. Valverdi, 218 Pa. 7, affirming 32 Pa. Superior Ct. 241; Com. v. Grotefend & Haun, 85 Pa. Superior Ct. 7. Except where the publication is of a very damaging character, or inspired by a party to the suit, of which there is not the slightest suggestion here, it would form an unfortunate precedent to

make it the basis of a mistrial. Jurors must and doubtless can be depended upon to try cases according to the evidence regardless of casual statements in the daily press.

At the instance of defendant, an occulist examined Mrs. Wilson's eyes during the trial and then was not called as a witness. There was no error in permitting her in rebuttal to mention this examination. The neglect of appellant to call its own expert might permit the jury to infer that if called his testimony would not aid the defense. See Steel et al., Exrs., v. Snyder et ux., 295 Pa. 120.

Plaintiffs' witnesses made a very plain case of negligence, hence it was not error for the trial judge to remark to the jury that if they believed such evidence they would likely conclude that the defendant was guilty of negligence. This left the question to the jury and was followed by a remark to the effect that if the jury believed the defendant's witnesses, there could be no recovery.

In appeal No. 275, January Term, 1928, the judgment in favor of Mrs. Madeline A. Wilson is affirmed. In appeal No. 277, January Term, 1928, the judgment for $5,000 in favor of John H. Wilson is affirmed, and in appeal No. 276, January Term, 1928, the judgment for $3,000 in favor of John H. Wilson is reduced to the sum of $365, with damages equal to six per cent for delay since January 7, 1927, and as so modified is affirmed.