23566.   LOUISVILLE & NASHVILLE RAILROAD CO.
*v.* HICKS.

DECIDED SEPTEMBER 28, 1934.

*Tye, Thomson & Tye, A. H. Burtz, Watkins Edwards, Morris & Welsch,* for plaintiff in error.

*Harwell, Fairman & Barrett, J. E. Mozley,* contra.

MACINTYRE, J. S. C. Hicks, a former employee of the Louisville and Nashville Railroad Company, brought suit against the company for damages for personal injuries in the sum of $50,000 and recovered a verdict and judgment for $9000. The action was brought under the Federal employers' liability act. The defense of the railroad company was that "from the ordinary hazard of his employment, which he fully understood and voluntarily assumed," the defendant assumed the risk, and that the injury complained of arose out of an ordinary hazard of his employment.

The evidence for the plaintiff showed that he had been in the employ of the defendant company for nearly twenty years, and that he, at the time he was injured, was employed as a fireman operating a train between Marietta, Georgia, and Ellijay; that while in the act of firing the engine on this particular trip, plaintiff observed that the coal feed stopped, and he took his coal-pick and dug into the coal and found a large lump. He attempted to burst the lump by striking it with a coal-pick, and in striking it a small particle flaked from the same and struck him in the left eye and caused the loss of his eyesight. It was pleaded and admitted that the following rule was in effect at the time: "Coal will be broken to the proper size for firing and will be kept within reach of the fireman, it being the intent that the coal be handled but once with the shovel." The plaintiff testified that he was accustomed to the

handling of coal and he knew the difference between striking coal and slate with a coal-pick, and that he had known for many years that slate would fly from slatey coal upon being struck; that particles would also fly from coal upon being struck, and that he knew these facts by observation and experiences as a fireman for seventeen years. He saw the lump or substance before he struck it, but did not wear any goggles over his eyes to protect them; that he had never used any precaution to protect his eyes. He also knew that under the rule agreement, he could not have been compelled to handle the lump which he attempted to break up. Evidence for the plaintiff also showed that the lump broken would show "at a glance" that it contained more slate than coal. Upon conclusion of the plaintiff's testimony, the court refused to direct a verdict, and submitted the issues to a jury, which returned a verdict for the plaintiff.

This action, while brought under the Federal employers' liability act, was not predicated on the violation of a Federal statute for the protection of employees; hence the doctrine of the assumption of risk was available as a complete defense, and no presumption of negligence existed against the defendant, since the employee assumes the ordinary risks incident to his employment. *Southern Ry. Co.* v. *Simmons*, 24 *Ga. App.* 96; *Southern Ry. Co.* v. *Blackwell*, 20 *Ga. App.* 630 (93 S. E. 321). In *Gray* v. *Garrison*, 49 *Ga. App.* 472 (176 S. E. 412), it was said that the assumption of the risk arises out of contract, which condition may be implied from the conduct of the plaintiff, which of itself may amount to a waiver of the duty owing by the defendant to the plaintiff. In *Brown* v. *Rome Machine &c. Co.*, 5 *Ga. App.* 142 (62 S. E. 720), it was said: "These implied obligations and assumptions which the law adds to the express agreements in all contracts are familiar to lawyers and laymen alike; they are simply inferences which the courts draw from the transaction, on the ground that the parties naturally must have intended them. Confronted with the proposition of being required to work under an unsafe system, at an unsafe place, with incompetent fellow servants, or with unsafe instrumentalities, the servant would have the right of abandoning the contract and suing the master for breaching it as to this material, though implied, portion of it. However, if he knows the actual condition of things when he contracts, or if he

subsequently discovers it, he may not choose to refuse to work; the doing of the work may be such a privilege that he is willing to take the chances of getting hurt, so that he in the one case, by actually contracting with knowledge of the danger, or in the other case by refusing to abandon after knowledge, and thereby waiving the master's breach, raises an implied agreement against himself that he will not hold the master to the obligation of furnishing any safer place, ways of work, servants, or appliances than what already he sees to exist,—or, as we say in juridic terminology, he assumes the risk of the delinquencies." In Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U. S. 44 (52 Sup. Ct. 45), it was said: "In actions under the Federal employers' liability act, where the undisputed evidence sustains the defense of assumption of risk, the trial judge should direct a verdict for the defendant. The evidence clearly showed that an injury to plaintiff's eye (caused by a steel chip which flew into it when a rail was being cut by sledge-hammer and cold chisel) resulted from ordinary hazards of his employment, which he fully understood and voluntarily assumed; that there was no complaint against his exposure to the obvious danger unprotected by goggles, nor any promise by his superior to mitigate it." In Nordstrom v. Spokane & Inland Empire Ry. Co., 55 Wash. 521 (104 Pac. 809, 25 L. R. A. (N. S.) 364), it was said: "A servant knowing that his occupation would be likely to cause iron dust to enter his eyes can not hold his master liable for the loss of an eye thereby on the ground that he did not know that such injury would result." In Delaware &c. R. Co. v. Koske, 279 U. S. 7, it was said that an employee assumes ordinary risks of his employment by carriers under the Federal employer's liability act, except as provided in § 4, and that extraordinary risks and those due to negligence of employer and fellow employees are assumed where obvious or fully known and appreciated. See also Osborn v. Chicago &c. Ry. Co. (Mo.), 1 S. W. (2d) 181. Seaboard Air-Line Ry. v. Horton, 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475); L. & N. R. Co. v. Dunn, 21 Ga. App. 379 (94 S. E. 661); Crown Cotton Mills v. McNally, 123 Ga. 35 (51 S. E. 13); Howard v. Central of Ga. Ry. Co., 138 Ga. 537 (75 S. E. 624). In McCulley v. Monongahela R. Co., 289 Pa. 393 (137 Atl. 623), a locomotive fireman, who was injured when struck by a coal tipple while leaning

out of a window was held not entitled to recover, in view of evidence showing his knowledge of the position of such tipple.

It can not be doubted, under the evidence in this case, that the plaintiff was fully aware of the fact that coal at times contains slate, and that lumps of coal or slate, when struck by a pick, would probably burst and cause particles or fragments thereof to scatter in all directions. It is also in evidence that he took no precaution to avoid injury because of such fragments, and that he did not wear any goggles at any time to protect his eyes. The evidence discloses that he fully knew and understood that such was and would be the natural and probable result of striking a lump of coal or slate with a pick. It is fairly inferable that such an occurrence was a frequent happening. Nevertheless, this plaintiff in line of his duty and even though the railroad company did not furnish to him coal that might be handled at all times with a shovel, acted in the face of an obvious danger with full knowledge of its consequences, and for this reason the evidence failed to support the verdict, and it was error for the court to overrule the motion for new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*